UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


WATER CRAFT MANAGEMENT,
L.L.C., ET AL
                                    CIVIL ACTION

VERSUS
                                    NUMBER 99-1031-FJP-SCR

MERCURY MARINE (A DIVISION OF
BRUNSWICK CORPORATION), ET AL


**RULING**

**I.   Procedural History**

     This case is again before the Court to determine the amount of
damages, if any, the plaintiffs are entitled to on their state law
claims.  As the record reflects, the Court bifurcated the issues of
liability and damages.  The Court first tried the federal antitrust
claim and the state law claims.  For reasons given, the Court
dismissed the plaintiffs' antitrust claim but found the plaintiffs
had proven their state law fraud and detrimental reliance claims.[1]
On appeal, the Fifth Circuit Court of Appeals affirmed the Court's
decision which dismissed plaintiffs' federal antitrust claim.[2]
However, the Fifth Circuit would not consider the state law claims
on procedural grounds and remanded the case to this Court for
further action in accordance with its opinion.  Thus, the Court

---

[1]*Water Craft Management, L.L.C. v. Mercury Marine*, 361
F.Supp.2d 518 (M.D. La. 2004).

[2]457 F.3d 484 (5th Cir. 2006).

Doc#46156

must now determine the amount of damages, if any, the plaintiffs are entitled to recover in this case.

Because of the very detailed opinion previously written by the Court, the Court will not repeat the findings made by the Court in its earlier opinion.  The Court adopts the findings of fact and conclusions of law previously made by the Court as part of this opinion.

## II.  Contentions of the Parties

Water Craft Management, L.L.C. ("Water Craft"),[3] Wayne Glascock ("Glascock"), and Nick Martrain ("Martrain") brought this suit against Mercury Marine ("Mercury") to recover damages on their state law claims of detrimental reliance and fraud.  Following a lengthy bench trial on the federal law claims, the Court ruled that plaintiffs had proven their fraud and detrimental reliance claims.[4] As noted earlier, the Court adopts its prior ruling on the state law claims and will proceed to a determination of damages.  As noted in its prior ruling, Water Craft operated a store under the name of LA Boating.  To avoid confusion, the Court will refer to the plaintiffs as Water Craft, Glascock, and Martrain.

While plaintiffs seek millions of dollars in damages, it is

---

[3]The parties may sometimes be referred to as Water Craft or plaintiffs in this opinion.

[4]Although this case was tried in 2004, the case was appealed and there were further delays that were unavoidable.  These delays were not the fault of this Court or the parties and their counsel.

clear that many of these claims were speculative and had no evidentiary support which would allow the Court to award the damages sought as a matter of law.  Plaintiffs did not even call an expert at the damages trial to support their contentions. Therefore, the Court will award the following damages to the plaintiffs:

Water Craft, Glascock, and Martrain shall be allowed to recover the $50,050.00 note which was borrowed from Fidelity Bank & Trust Company on December 19, 1997, together with any interest and attorney's fees paid on the note.

Glascock shall be entitled to recover the sum of $250,000.00 for his damages.

Martrain shall be allowed to recover the sum of $200,000.00 for his damages.

The Court now turns to a discussion of the reasons to support its decision herein.

As the Court noted earlier, many of the plaintiffs' claims were either speculative or they were not caused by Mercury. However, for purposes of completeness, the Court will list all of the claims each plaintiff sought.  Wayne Glascock contends he is entitled to collect the following damages: (1) $150,050.00 in debt payment; (2) approximately $732,000.00 in debt payment/loss; (3) $44,604.85 in debt payment and mortgaged property; (4) $60,000.00 in cash infusions; (5) $99,739.23 in outstanding notes receivable

to Hammond Boating Centre;[5] (6) $50,000.00 paid to Bombardier Capital, Inc. for outstanding debt; and (7) $350,000.00 in general damages.

Nick Martrain claims the following damages: (1) $162,591.01 of lost equity in home; (2) $22,000.00 in lost income; (3) "approximately" $8,700.00 in outstanding debt to GMAC; (4) approximately $13,000.00 in outstanding debt to Donovan Marine; and (5) $350,000.00 in general damages.

Water Craft contends it is owed damages in the amount of $233,476.39, combining the losses sustained during the months of August, September, October, November, and December of the relevant year. Although Water Craft did not list as one of its claims the $50,050.00 note, it is clear this is a claim in the case. It does not take much thought and analysis to see that Glascock and Martrain have listed as possible damages claims that are not even remotely related to these state law claims. They have just listed as possible damages all losses they may have sustained in other business transactions or personal debts. The Court, when finding that Mercury was liable in this case, did not mean or intend that the plaintiffs could list as damages claims that were in no way related to the Court's finding that Mercury was guilty of fraud and was liable under the detrimental reliance jurisprudence. The Court's prior intent and ruling and the Court's current ruling in

_____

[5]Hammond Boating Centre was not a party to this case.

this case clearly hold that any damages claimed by the plaintiffs had to be directly related to the fraud and detrimental reliance which caused plaintiffs to borrow $50,050.00 and operate the Baton Rouge store for four to five more months.  It is clear that Travis Marine was only in competition with Water Craft for four or five months.  It did not have Mercury inventory that would cause Water Craft or the individual plaintiffs to sustain any damages.

## III. Law and Analysis

### A. Plaintiffs are Entitled to Damages for Detrimental Reliance and Fraudulent Misrepresentation[6]

In its August 12, 2004 Ruling, the Court held that plaintiffs relied to their detriment upon misrepresentations and promises made by the defendants during the negotiation process, which caused the plaintiffs to keep open their Baton Rouge dealership for several more months.  Louisiana Civil Code article 1967 provides:

> Cause is the reason why a party obligates himself.
>
> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

To prove detrimental reliance, a party must establish: (1) a

---

[6]The defendant is correct that plaintiffs are not entitled to damages for rescission under La. Civ. Code article 1958. Plaintiffs cannot seek to both enforce and rescind a contract. *Bass v. Coupel*, 671 So.2d 344 (La. App. 1st Cir. 1995), *writ denied*, 669 So.2d 426 (La. 1996).

representation by word or conduct; (2) justifiable/reasonable reliance; and (3) a change in position to one's detriment because of the reliance.[7]  Since the Court has found that the plaintiffs have proved this claim by a preponderance of the evidence, the plaintiffs are entitled to damages **caused** by their detrimental reliance on Mercury's statements.  However, as the defendant has noted in its post-trial brief, Comment (e) to Article 1967 states: "The court, in other words, need not necessarily grant the promissee both of the elements of damages specified in revised C.C. Article 1995," i.e., the loss sustained by the obligee and the profit of which he has been deprived.[8]  Thus, the Court has discretion to award either "the expenses incurred _or_ the damages suffered" under this article, but does not have to award both. This is particularly important in this case since the plaintiffs did not even call an expert to support their claims for damages. Many of the claims are speculative.  In addition, plaintiffs failed to prove these damages were **caused** by their reliance on Mercury.

The Court also found that plaintiffs proved their fraud claim by a preponderance of the evidence.  The Louisiana Civil Code defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for

---

[7]_Lakeland Anesthesia v. United Healthcare of Louisiana_, 03-1662 (La. App. 4 Cir. 3/17/04), 871 So.2d 380, 393.

[8]La. CIV. CODE Art. 1967, 1984 Rev. Cmnt (e).

one party or to cause a loss or inconvenience to the other."[9]   A party who is injured by the fraud and deceit of another has a cause of action for damages.[10]   The action for fraudulent misrepresentation may be brought either as a breach of contract or tort action.   If the cause of action is under contract, the plaintiff's damages are limited to actual pecuniary loss proven by a preponderance of the evidence.   If the action lies in tort, the plaintiff may recover non-pecuniary losses as well, but only if he proves such losses were caused by the fraud by a preponderance of the evidence.[11]   To recover under a cause of action in delictual fraud, a plaintiff must prove three elements:   "(1) a misrepresentation of a material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resultant injury."[12]   The Court previously found that plaintiffs satisfied this burden under the facts of this case.   As such, plaintiffs are entitled to general damages, but the amount of such damages must be proven by

---

[9]La. Civ. Code art. 1953.

[10]*Water Craft Management, L.L.C. v. Mercury Marine*, 361 F.Supp.2d 518, 562 (M.D. La. 2004)(citations omitted).

[11]*Id.*, citing *Haggerty v. March*, 480 So.2d 1064, 1068 (La. App. 5 Cir. 1985).

[12]*Id.*, citing *Abell v. Potomac Insurance Company*, 858 F.2d 1004, 1131 n. 33 (5th Cir. 1988), *vacated on other grounds sub nom.*, *Fryer v. Abell*, 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989); see also, *Becnel v. Grodner*, 2007-1041 (La. App. 4 Cir. 4/2/08), 982 So.2d 891, 894, citing *Newport Ltd. v. Sears Roebuck & Co.*, 6 F.3d 1058, 1068 (5th Cir. 1993).

a preponderance of the evidence and must have been caused by the defendant's fraud.

### B. Damages Must Be Proven by a Preponderance of the Evidence and Must Have Been Caused by Mercury

Under Louisiana law, a plaintiff must prove his case by a preponderance of the evidence and must show the damages were directly caused by the defendant.  In order to prove damages, it is mandatory that plaintiffs prove each and every element of the damages which each claims.[13]  The allowance of loss of profits as an element of damages is more liberal in actions purely in tort as opposed to actions for breach of contract.[14]  Even so, "to recover for his lost profits and earnings, even in tort, the plaintiff must prove the loss with reasonable certainty."[15]  Furthermore, "[m]ere estimates of loss will not support a claim for lost profits."[16]  The law requires that "[d]amages like any other fact should be proven by a preponderance of the evidence and to constitute a preponderance, such evidence must show the loss is more probable

---

[13]*Haggerty v. March*, 480 So.2d at 1067, citing *Borden Inc. v. Howard Trucking Co., Inc.*, 425 So.2d 893 (La. App. 1 Cir. 1983); *Savoie v. Judice*, 458 So.2d 659 (La. App. 3 Cir. 1984).

[14]*Id.* at 1068, citing *F & F Transfer, Inc. v. Tardo*, 425 So.2d 874 (La. App. 4 Cir. 1983).

[15]*Id.*, citing *Dubois v. State of Louisiana through Dept. Of Public Safety*, 466 So.2d 1381 (La. App. 3 Cir. 1985); *F & F Transfer, Inc. v. Tardo*, supra.

[16]*Id.*, citing *Shreveport Laundries, Inc. v. Red Iron Drilling Co.*, 192 So. 895 (La. App. 2 Cir. 1939).

than not."[17]  Furthermore, with respect to lost future profits,[18] the law is clear that proving any reasonably accurate estimate of damages arising out of a contract is difficult without expert testimony establishing lost future profits, and without proof of net profits.[19]

While the Court finds plaintiffs are entitled to recover some damages, based on the applicable law and the testimony and evidence presented during the trial on damages, plaintiffs are clearly not entitled to recover the vast amount of damages they claim.  For the majority of the items of damages claimed by the plaintiffs, they relied wholly on speculation and guesses, which is improper as a matter of law.  Further, the Court finds that plaintiffs failed to conclusively establish that most of the losses claimed were **directly caused** by the actions of Mercury Marine rather than having resulted from plaintiffs' management decisions, market fluctuations, other lawful competition, or a variety of other potential factors clearly not related to this case and Mercury's

---

[17]*Id.*, citing *Jordan v. Travelers Insurance Company*, 257 La. 995, 245 So.2d 151 (1971).

[18]The Court notes that it does not appear that Plaintiffs seek damages for lost future profits, but the Court includes the relevant law out of an abundance of caution.

[19]*See e.g., Mahayna, Inc. v. Poydras Center Assoc.*, 95-0932 (La. App. 4 Cir. 12/14/95), 665 So.2d 166, 168(refusing to award lost profits supported only by estimates of loss), *writs denied*, 96-0424 (La. 3/22/96), 669 So.2d 1210, 1211.

action.   The Court specifically addressed this issue in ruling on

liability:

> It is even more difficult to prove that Water
> Craft's losses were attributable to Mercury's
> alleged violation of the antitrust laws
> because the <u>testimony and evidence presented
> at the trial supports a finding that other
> reasons led to the eventual demise of the LA
> Boating store.</u> LA Boating operated its first
> year without Travis as a competing Mercury
> dealer, and still sustained a $70,000 loss.
> This outcome occurred despite the business's
> pro rata business plan which had projected a
> profit of over $370,000 for the first year.
> Correspondence dated before Travis became a
> Mercury dealer was offered into evidence made
> references to a "bad year" for LA Boating, and
> also contained references to hurricanes and a
> general downturn in the market as reasons for
> Water Craft's economic troubles. Glascock
> himself admitted during his testimony that
> there had been a downturn in the market at the
> same time that LA Boating revenues were
> declining. Finally, the evidence establishes
> that the LA Boating store was in serious
> trouble by August 1998, months before Travis
> had even signed the letter of intent to become
> a Mercury dealer. By this time, Glascock and
> Martrain had already decided to shut down
> their failing dealership, even without any
> competition from Travis as a Mercury dealer.
> In addition, financial specialists were
> already very concerned about the fact that LA
> Boating was classified as being SAU. This
> meant they were selling products out of
> inventory, but using the proceeds to pay off
> other creditors instead of the creditor which
> had provided the inventory.[20]

Based on this ruling, Water Craft had prior notice and the

opportunity and obligation to clearly designate for the Court what

---

[20]*Water Craft*, 361 F.Supp.2d at 540 (emphasis added).

losses were not only specifically caused by the actions of Mercury
Marine and not other outside factors, but also to do it with
competent evidence including expert testimony.  Plaintiffs failed
to present any expert testimony supporting their claims that the
losses were attributable to Mercury Marine and not other outside
causes.[21]    Nor did the plaintiffs produce evidence that was
supported by documented evidence rather than guesses and
speculation.  Plaintiffs simply presented an amalgam of profit-and-
loss statements and balance sheets from their failed businesses
which failed to clearly designate Water Craft's Baton Rouge
operations, to show its specific losses.  Plaintiffs also failed
to show how those alleged losses were directly related to the
actions of Mercury Marine.   The Court also finds that expert
testimony was essential under the facts of this case to support
plaintiffs' claims and to exclude the various potential alternative
causes for Water Craft's losses.  Plaintiffs even failed to rebut
the testimony of the defendant's expert who testified that, when
Water Craft sustained approximately $70,000.00 loss after its first
year of operations, a reasonable businessman would have closed its

---

[21]Plaintiffs did have an expert at the trial on liability
issues.  The credibility of this expert was a major issue in this
case.  Plaintiffs moved to call an additional expert prior to the
damages trial very late in the case, which was denied by the Court
in Rec. Doc. No. 456 for the following reason: "This case has been
pending for some time, discovery has been closed, appeals taken,
trial dates set, and a final pretrial order filed."

doors.[22]  Glascock and Martrain were very experienced in the boating business.  While the plaintiffs should have closed their business, Mercury did cause plaintiffs to invest another $50,050.00 in the business which then caused the plaintiffs to rely to their detriment on Mercury and was the reason the Court found fraud and detrimental reliance on Mercury's part.

Similarly, in *Watermeier v. Mansueto*, the purchasers of a liquor store brought suit against the vendor, seeking to recover their financial losses arising from the operation of their business.[23]  The *Watermeier* plaintiffs asserted many of the same claims as presented by the Water Craft plaintiffs.  While the *Watermeier* court found fraud to be present as a threshold matter, the court also held that "the plaintiffs failed to establish the cause of their losses.  The steady decreases in sales could be attributable to factors beyond the defendants' control, such as the declining local economy, dissatisfaction of customers, and the plaintiffs' management of the business."[24]  Many of these same reasons caused plaintiffs' losses and were fully set forth earlier in this opinion and in the Court's original opinion.  Plaintiffs' attempt to lay the blame on Mercury for all of their losses is

---

[22]Transcript of September 25, 2008, p. 312, line 13 to p. 313, line 1.

[23]562 So.2d 920 (La App. 5 Cir. 1990).

[24]*Id.* at 924.

clearly speculative and frivolous on their part and in no way proves causation nor does it support their claims with competent evidence.

With respect to much of the plaintiffs' personal damages claims, the Court must again conclude that most if not all of the testimony presented in support of such claims was completely arbitrary and speculative and not supported by competent evidence. While plaintiffs want the Court to find these damages were wholly caused by the actions of Mercury Marine, the Court cannot do so under the facts of this case. An expert called by the plaintiffs could have provided the Court with some guidance as to what specific losses resulted from the conduct of Mercury Marine and how and why. In fact, the Court specifically questioned Martrain about any documentation or proof for the losses he testified about during the trial, and Martrain responded that he had not brought any documentation to Court and ultimately acknowledged on cross-examination that most of his claims were based on speculation.[25] Glascock's claims also lacked support and were either speculative or clearly not caused by Mercury.

The law is clear that a court is not justified in awarding damages in the absence of definite proof and causation. The plaintiff has the burden of proving the damage suffered by him as

---

[25]Transcript of September 24, 2008, p. 54, lines 10-25; Transcript of September 25, 2008, p. 250, line 14 to p. 269, line 1.

a result of the breach of contract.[26]   While the absence of independent corroborating evidence may not be fatal to the plaintiff's burden of proof, the lack of even a minimal degree of detail or specificity as to the extent of loss and the lack of causation precludes the Court from awarding all of the damages sought by the plaintiffs except those noted earlier in this opinion.  Speculation and conjecture cannot be accepted as a basis for fixing loss of earnings or profits.[27]  A claim for lost profits may not be supported by mere estimates of loss.[28]  The testimony of Glascock and Martrain was not permissible as "lay opinions" under Rule 701 of the Federal Rules of Evidence because, "a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person."[29]  Defendant contends, and the Court agrees, that the complex issues underlying the determination and causation of business losses require the application of specialized knowledge.  Also, the testimony plaintiffs wanted to give as lay opinions is testimony which is usually given by experts qualified under Rule

---

[26]*Campbell v. Lelong Trust*, 327 So.2d 533 (La. App. 2d Cir. 1976), *writs denied*, 331 So.2d 494, 496 (La. 1976).

[27]*Jackson v. Lare*, 34,124 (La. App. 2 Cir. 11/1/00), 779 So.2d 808, 814, quoting *Campbell v. Lelong Trust*, 327 So.2d at 533.

[28]*Tesvich v. 3-A's Towing Co.*, 547 So.2d 1106 (La. App. 4th Cir.), *writ denied*, 552 So.2d 383 (La. 1989).

[29]*Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996).

702 of the Federal Rules of Evidence.  Thus, these issues were not appropriate subjects for lay opinion testimony as a matter of law under the facts of this case.

## C.   Causes of Action of Individual Plaintiffs

Defendant contends that because Water Craft is a Louisiana Limited Liability Company, any claims by Glascock and Martrain individually are barred under Louisiana law.  Defendant cites *Eximco, Inc. v. Trane Co.* wherein the Fifth Circuit held that "the principals of Eximco failed to prove any injury suffered by them personally, separate from the injuries suffered by Eximco, Inc."[30] The Fifth Circuit relied on well-settled law that "'only a corporation and not a shareholder, not even a sole shareholder, can complain of any injury sustained by, or a wrong done to, the corporation.'"[31]

However, it is also true that "[i]f the tort-based loss belongs to the shareholder, he has a right to sue for its recovery, even though the corporation has also suffered damages caused by the same harm."[32]  To determine whether a shareholder has a personal right to recover, the jurisprudence requires an injury that is

---

[30]737 F.2d 505, 511 (5th Cir. 1984).

[31]*Id.*, quoting *United States v. Palmer*, 578 F.2d 144, 145-46 (5th Cir. 1978).

[32]*Glod v. Baker*, 2002-988 (La. App. 3 Cir. 8/6/03), 851 So.2d 1255, 1266, citing *Hinchman v. Oubre*, 445 So.2d 1313 (La. App. 4 Cir. 1984).

"special" or unique to the shareholder.  The American Law Institute suggests this test for distinguishing direct from derivative claims: "'if a shareholder can recover in a suit only by the showing that the corporation was injured, then the suit is derivative in nature, even if the corporate injury does cause indirect harm to the shareholder, while if a recovery can be granted without proof of a corporate loss, then the suit is considered to be direct.'"[33]  In *Wall v. First National Bank of Shreveport*, the court noted that a shareholder could not sue to recover damages done to the corporation,[34] but also stated:

> Nonetheless, under the procedural posture of this case it is a conceivable possibility that the individual plaintiffs might amend their respective allegations to posture themselves similarly to the corporate plaintiffs and to allege some *direct* damage to them and thus cure the grounds for the exception.[35]

Based on the Court's previous ruling, it is clear that this case is distinguishable from the cases cited by the defendant because the individual plaintiffs Glascock and Martrain clearly suffered direct damage as a result of the actions of Mercury

---

[33]*St. Bernard Optical Corporation v. Schoenberger*, 2005-0548 (La. App. 4 cir. 1/25/06), 925 So.2d 604, 608, quoting Morris Holmes, 8 La. Civ. Law Treatise - Business Organizations 34.03 (1999).

[34]482 So.2d 865, 867, citing *Texas Industries, Inc. v. Dupuy & Dupuy Develop., Inc.*, 227 So.2d 265 (La. App. 2d Cir. 1969); *Hinchman v. Oubre*, 445 So.2d 1313 (La. App. 5 Cir. 1984).

[35]*Id.*, citing CCP Art. 934.  See *Teacher's Ret. System v. La. St. Employees*, 456 So.2d 594 (La. 1984)(emphasis in original).

Marine, not just indirectly by the damage done to Water Craft. Both Glascock and Martrain were individually liable on the note which was signed because of Mercury's illegal actions.   While damage to Water Craft is part of the claim in this case, a great deal of the plaintiffs' claims also center around the individual damage caused to Glascock and Martrain, professionally and personally, as well as their personal liability on the note.   The fact that plaintiffs have greatly overestimated the amount of their damages does not negate the fact they indeed suffered some damages separate and apart from the business as the Court previously held.[36]

### D.   Damages Awarded

Defendant contends plaintiffs are not entitled to any damages for non-pecuniary loss under the fraudulent misrepresentation claim because the evidence does not support a finding that Mercury Marine was in bad faith.   Defendant cites Louisiana Civil Code article 1997, which states: "An obligor is in bad faith if he intentionally and maliciously fails to perform his obligation."   Defendant further contends that the Court's previous ruling that "Mercury had no intent to drive LA Boating out of business by signing Travis as a dealer" is determinative that Mercury Marine was not in bad faith.   This argument is without merit.   The Court will not reconsider the Court's prior ruling in which it found Mercury did in fact commit a fraud on the plaintiffs.

---

[36]See *Water Craft*, 361 F.Supp.2d at 561.

The statement relied upon by the defendant was made in the context of the antitrust claims brought by the plaintiffs on which the Court ruled in favor of the defendant.  When ruling on the fraudulent misrepresentation claim, the Court made the following specific findings:

> Randolph also failed to tell Glascock and Martrain the truth once negotiations did begin with Travis.  The Court finds that the statements regarding Travis were false when made because the testimony and evidence presented throughout this case supports a finding that Mercury intended to make Travis one of its dealers even when it was negotiating with plaintiffs. The testimony of Schmiedel also establishes that Mercury executives encouraged Schmiedel to give "lip service" to Mercury dealers, like Glascock and Martrain, when questioned about the possibility of Travis becoming a Mercury dealer. <u>These facts clearly show that Mercury never intended to honor its representations to Glascock and Martrain</u> that Travis would not become a Mercury dealer. The Court finds as a matter of fact and law that the representations Mercury representatives made to Glascock and Martrain about Travis were not merely unfulfilled promises, but were fraudulent misrepresentations.
>
> The Court also finds that Mercury made misrepresentations of material fact to the plaintiffs when Randolph, Schmiedel, and other Mercury representatives told plaintiffs that Travis was not going to be made a Mercury dealer or was not in the process of becoming a Mercury dealer. <u>It is clear that these misrepresentations were made with the intent to deceive the plaintiffs</u>. The Court's finding is supported by the evidence which established that <u>Mercury representatives took affirmative steps to shield the truth about a possible</u>

<u>Travis deal from Glascock and Martrain.</u>[37]

Thus, it is clear that the representations of the Mercury Marine representatives were made in bad faith.[38]  However, the Court agrees with defendant's contention that "to argue, as do Glascock and Martrain, that every adverse financial event in their lives following the demise of Water Craft must be made good by Mercury Marine is simply ludicrous."[39]  Thus, under the facts of this case, "[w]hen damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages."[40]  For this Court to require Mercury to pay for every financial hardship Glascock and Martrain allegedly sustained would be clear and reversible error.  Plaintiffs have simply failed to present evidence to support their allegations and even if some of the allegations may have been supported by a document, the plaintiffs failed to prove these damages were caused by Mercury.

The Court has listed the damages the plaintiffs should recover earlier in this opinion.  The plaintiffs proved these damages by a

---

[37]*Water Craft*, 361 F.Supp.2d at 563-64 (emphasis added).

[38]Further, the Court stated in the same opinion that "Glascock and Martrain sustained some damages, though the determination of the amount of damages is not before the Court at this time."  *Id.,* at 561.

[39]Rec. Doc. No. 500, p. 13.

[40]*L & A Contracting Company, Inc. v. Ram Industrial Coatings, Inc.*, 1999-0354 (La. App. 1 Cir. 6/23/00), 762 So.2d 1223, 1235, citing La. C.C. art. 1999; *Hollenbach v. Holden*, 98-970 (La. App. 3 Cir. 2/3/99), 728 So.2d 544, 549.

preponderance of the evidence and also proved these damages were caused by Mercury. It is clear that but for the fraudulent misrepresentations of Mercury, the plaintiffs would not have borrowed the $50,050.00 from Fidelity Bank & Trust Company. The plaintiffs were justified in relying to their detriment on the statements made by representatives of Mercury.

The Court also finds that Glascock and Martrain sustained some pecuniary damages directly caused by Mercury. This type of damages does not need to be proven to a legal certainty. Indeed, if this was a jury trial, the Court would give the following instruction to the jury:

> If you find that the defendant is liable to the plaintiff, then you must determine an amount that is fair compensation for all of the plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the plaintiff whole—that is, to compensate the plaintiff for the damage that the plaintiff has suffered. [Compensatory damages are not limited to expenses that the plaintiff may have incurred because of his injury. If the plaintiff wins, he is entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that he has suffered because of the defendant's conduct.]

> You may award compensatory damages only for injuries that the plaintiff proves were proximately caused by the defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of the plaintiff's damages, no more and no less. [Damages are not allowed as a punishment and cannot be imposed or increased to penalize the defendant.] You should not award compensatory damages for speculative injuries, but only for those injuries which the plaintiff has actually suffered or that the plaintiff is reasonably likely to suffer in the future.

> If you decide to award compensatory damages, you

should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.[41]

Applying the above standard, the Court finds that Glascock should be awarded $250,000.00 and Martrain $200,000.00 under the law and facts of this case.

The Court now turns to a discussion of the damages Glascock and Martrain allegedly sustained but are denied by the Court because the alleged damages are speculative, have no factual support and/or were not caused by Mercury.

Plaintiffs sought lost profits for the period of October to December 1998. These damages were not proven by a preponderance of the evidence. Based on the testimony and evidence presented at the damages trial, and in accordance with the Court's oral ruling during the trial, the Court will not award any damages plaintiffs sought for lost income between October and December when the new company opened its business. The plaintiffs were already losing money prior to this period. As the Court noted in the antitrust claim, Travis had little, if any, Mercury inventory, and there is

---

[41]5th Circuit Pattern Jury Instructions (Civil Cases) 2006, Section 15.2.

no proof that any sales Travis made would have been made by the plaintiffs.

As noted earlier, Glascock and Martrain have sought to recover any and all of the alleged damages sustained by them personally or by other companies which either or both owned.  Not only did plaintiffs fail to show Mercury caused these damages, but plaintiffs also failed to set forth sufficient proof to prove these damages.  Also, Glascock and Martrain failed to establish that they should be entitled to recover these alleged damages in their individual capacities instead of the corporation which allegedly sustained the loss.  None of their other companies were parties to this suit.  There was no showing that Glascock and Martrain have overcome the legal standard set forth by the Fifth Circuit in *Eximco* that "only a corporation and not a shareholder, not even a sole shareholder, can complain of any injury sustained by, or wrong done to, the corporation.[42]

In addition, the personal claims made by Martrain for loss of equity in his home, lost income, debt owed to GMAC and Donovan Marine, were not caused by Mercury.  The same may be said for Glascock's claim for debt payments, cash infusions, notes receivable to Hammond Boating Centre, and debts paid to Bombardier Capital, Inc.  The Court has awarded both plaintiffs sums for their

---

[42]*Eximco*, 737 F.2d at 511, quoting *United States v. Palmer*, 578 F.2d 144, 145-46 (5th Cir. 1978).

pecuniary losses of pain and suffering, humiliation, and anxiety suffered as a direct result of Mercury's actions.  Glascock shall be awarded $250,000.00, and Martrain shall be awarded $200,000.00 plus legal interest.

### E.   Mercury's Counterclaims

In its earlier ruling, the Court granted Mercury's counterclaims for damages.[43]  The Court adopts these findings in this opinion.  Although the Fifth Circuit affirmed the Court's decision on the antitrust claim, this Court is not certain the Fifth Circuit also considered and affirmed the damages the Court awarded to Mercury on its counterclaims.  Therefore, out of an abundance of caution and in the interest of justice and judicial economy, the Court again finds Mercury is entitled to recover the following damages:[44]

### Counterclaim I

Judgment in favor of Mercury Marine and against Wayne Glascock and Nick Martrain, III, in the amount of $79,117.32.

Judgment in favor of Mercury Marine and against Water Craft, Wayne Glascock, and Nick Martrain, III, in the amount of $11,379.75 under subrogation of rights to MMAC.

Judgment in favor of Mercury Marine and against Water Craft

---

[43]Rec. Doc. No. 372, pp. 93-95.

[44]See Rec. Doc. No. 384.  All awards of interest and/or attorneys fees remain as set forth in the September 30, 2004 Judgment, Rec. Doc. No. 384.

d/b/a Louisiana Boating, Wayne Glascock, and Nick Martrain, III, in the amount of $3,855.12 under the 1997 and 1998 Sales and Service Agreements.

Judgment in favor of Mercury Marine and against Wayne Glascock and Nick Martrain, III, in the amount of $6,076.67 due on open account.

### Counterclaim II

Judgment in favor of Mercury Marine and against Wayne Glascock in the amount of $26,576.94 with interest from date of judgment until paid.

### F.   Attorneys' Fees

Plaintiffs seek attorneys' fees based on the Court's ruling that the defendant is liable for fraudulent misrepresentation. Plaintiffs rely on Louisiana Civil Code article 1958, which states that "the party against whom rescission is granted because of fraud is liable for damages and attorney fees."  The Court has already held that plaintiffs cannot pursue rescission as a remedy since they sought the alternative remedy to enforce the contract.  For reasons which follow, the Court finds plaintiffs are not entitled to recover attorneys' fees under the law and facts of this case. Because the state law claims are based on Louisiana law, the Court must examine the Louisiana statutory provisions and jurisprudence on this issue.  A review of the Louisiana jurisprudence reveals that the decision by the Louisiana Fourth Circuit Court of Appeal

in *Coates v. Anco Insulations, Inc.*, is particularly relevant on whether plaintiffs can recover attorneys' fees.[45]

In *Coates*, the plaintiffs made the same argument which the Water Craft plaintiffs have made to this Court.  The court stated: "Clearly, Louisiana courts may not award attorneys' fees except where they are provided for by contract or by statute.  It is evidence that plaintiffs' causes of action do not arise from contract.  Plaintiffs argue that LSA- C.C. arts. 1953 and 1958 relating to fraud provide a statutory basis for such an award."[46]

After discussing the statutory history behind article 1953, the *Coates* court stated that "[t]he Louisiana fraud article, LSA-C.C. 1953 does not, by its own terms, authorize an award of attorney's fees."[47]  The court then addressed the award of attorney's fees authorized by article 1958 of the Louisiana Civil Code, the article on rescission.  The court discussed the relationship between articles 1953 and 1958 and found that "Plaintiffs have not asserted claims under the conventional obligations or sale provisions of the civil code.  The civil code provides for attorneys' fees not for all cases of fraud, but only

---

[45] 2000–1331 (La. App. 4 Cir. 3/21/01), 786 So.2d 749.

[46] *Id.* at 755.

[47] *Id.*

for those for which the remedy is rescission."[48]

The *Coates* court also discussed the *Haggerty v. March* decision which held that "elements of damage for the two types of fraud may differ, holding: 'If plaintiff's cause is under an action in contract his damages would be limited to actual pecuniary losses actually proven.  However, if the action is brought in tort under La.C.C. Article 2315, the plaintiff may recover non-pecuniary damages.'"[49] The *Coates* court continued: "We do not read 'non-pecuniary' to include attorneys' fees not otherwise provided for by contract or statute."[50]

Discussing another analogous decision in *MCS-1 Ltd. Partnership v. Progressive Bank & Trust Co.*,[51] the *Coates* court stated:

> The court recognizes the well-accepted concepts that negligent misrepresentation and fraudulent misrepresentation are torts, and that detrimental reliance is not based on an intent to be bound and does not require the existence of a valid contract.  However, it does not take the next step, as suggested by plaintiffs herein, to provide for attorneys' fees absent contractual fraud.
>
> There is no suggestion that plaintiffs would be entitled to rescission of any contract with the defendants.  While a trial on the merits may prove their entitlement to

---

[48]*Id.* at 756.

[49]*Id.* quoting *Haggerty*, 480 So.2d at 1067.

[50]*Id.*

[51]93-1404 (La. App. 1 Cir. 5/20/94), 637 So.2d 782, *writ denied*, 94-1622 (La. 9/30/94), 642 So.2d 878.

actual and non-pecuniary damages arising from detrimental reliance on defendants' fraudulent misrepresentations, sound in tort, we agree with the trial court that LSA-C.C. arts. 1953 and 1958 are inapplicable, and plaintiffs do not have a valid claim for attorneys' fees.[52]

For the same reasons set forth in *Coates*, and because the claims and arguments made in *Coates* are nearly identical to the facts of this case, the Court finds that plaintiffs are not entitled to attorneys' fees, under the law and facts of this case.

**IV.   Summary**

The Court finds that plaintiffs are entitled to recover the following sums under the law and facts of this case:

Water Craft, Glascock, and Martrain shall be allowed to recover the $50,050.00 note which was borrowed from Fidelity Bank & Trust Company, together with any interest and attorney's fees paid by the plaintiffs to the bank.

Glascock shall be entitled to recover the sum of $250,000.00, plus legal interest until paid.

Martrain shall be entitled to recover the sum of $200,000.00, plus legal interest until paid.

The Court finds Mercury is entitled to recover the following damages on its counterclaims, together with legal interest until paid:

**Counterclaim I**

Judgment in favor of Mercury Marine and against Wayne Glascock

---

[52]*Coates*, 786 So.2d at 756-57.

and Nick Martrain, III, in the amount of $79,117.32.

Judgment in favor of Mercury Marine and against Water Craft, Wayne Glascock, and Nick Martrain, III, in the amount of $11,379.75 under subrogation of rights to MMAC.

Judgment in favor of Mercury Marine and against Water Craft d/b/a Louisiana Boating, Wayne Glascock, and Nick Martrain, III, in the amount of $3,855.12 under the 1997 and 1998 Sales and Service Agreements.

Judgment in favor of Mercury Marine and against Wayne Glascock and Nick Martrain, III, in the amount of $6,076.67 due on open account.

**Counterclaim II**

Judgment in favor of Mercury Marine and against Wayne Glascock in the amount of $26,576.94 with interest from date of judgment until paid.

Finally, the Court denies plaintiffs' claim for attorneys' fees.

Judgment shall be entered accordingly.[53]

Baton Rouge, Louisiana, July 21, 2009.

_____
FRANK J. POLOZOLA
MIDDLE DISTRICT OF LOUISIANA

---

[53]The Court has considered all of the arguments and contentions of the parties whether specifically discussed in this opinion.